UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| David A. Potts and Geomatrix, LLC,<br>    *Plaintiffs*,<br><br>        *v.*<br><br>Cur–Tech, LLC,<br>    *Defendant*. | Civil No. 3:09cv65 (JBA)<br><br><br><br>February 24, 2012 |

RULING ON MOTIONS FOR SUMMARY JUDGMENT

On October 16, 2009, Plaintiffs David A. Potts and Geomatrix, LLC filed a Second Amended Complaint [Doc. # 39] against Defendant Cur–Tech, LLC, claiming that the CTL System, sold and distributed by Cur–Tech, infringes United States Patent No. 7,374,670 ("'670 Patent"). Cur–Tech moves [Doc. # 87] for summary judgment in its favor based on non–infringement and invalidity of the '670 Patent. Plaintiffs move [Doc. # 90] for summary judgment in their favor, arguing that the undisputed material facts demonstrate that the Cur–Tech CTL Wastewater System ("CTL System") literally infringes each of the elements of Claim 6 of the '670 Patent. For the reasons stated below, Plaintiffs' motion will be denied and Defendant's motion will be granted.

I.   Undisputed Facts

   A.   The '670 Patent

David Potts filed U.S. Patent Application No. 11/340,917 on January 27, 2006, as a continuation–in–part of Application No. 11/144,968, filed on June 3, 2005. '670 Patent. The United States Patent and Trademark Officer ("USPTO") issued the '670 Patent on May 20, 2008 from Application No. 11/340,917. *Id.*

Claim 6 of the '670 Patent claims as part of the "high aspect ratio wastewater system" described therein:

> 6. A leaching conduit comprising:
> a channel;
> a first pipe in fluid communication with the high aspect ratio channel; and the channel comprising:
>> at least one first geonet of a first height, formed into a generally U-shaped configuration, with a bottom of the U laying generally parallel to the first pipe, and the at least first geonet in fluid communication with the first pipe;
>> at least one second geonet of a first height, formed into a generally U-shaped configuration, with a bottom of the U laying adjacent to bottom of the U of the at least one first geonet, and the at least one second geonet in fluid communication with the first pipe; and
>
> wherein the aspect ratio of each geonet is between about 96 and about 3.
>  . . .
> 12. The leaching conduit of claim 6, wherein each geonet comprises the material selected from the group consisting of an irregularly coiled stringy structure with one layer of an air-permeable sheeting; an irregularly coiled stringy structure contained between two layers of an air-permeable sheeting; crushed stone; pea stone; polystyrene aggregate incorporated into suitable netting; polystyrene aggregate incorporated into a suitable blanket; and a molded plastic three dimensional grid.

### B.     The CTL System

Cur-Tech's CTL System is made up of a central four-foot by eight-foot concrete chamber surrounded by prefabricated plastic appendages, or fins, placed along its sides. (CTL System Product Description, Ex. E to Potts Aff. [Doc. # 90–2]; Currivan Aff., Ex. 1 to Def.'s Loc. R. 56(a)1 Stmt. ¶ 8.) The fins abut openings in the concrete chamber; each fin "is open at the bottom and has a square box shape with four rigid sides, and the four rigid sides are made of flat and perforated panels of hard plastic." (Currivan Aff. ¶ 9; *see also* CTL System Product Description at 6, Installation Instructions.) The exterior plastic walls of the

individual box–shaped fins have pins that extend out away from the wall into the surrounding soil. (Potts Aff. ¶ 11; Supplemental Currivan Aff. ¶¶ 7–8; CTL System Product Description at 1.) These pins are on the outside of the fins only; they do not extend inside the fin walls. (Supplemental Currivan Aff. ¶ 8.) During installation, backfill is compacted alongside and in between the fins; it is packed "as tight as possible" against the fin bodies without leaving any air pockets. (CTL Product Description at 6–7; Supplement Currivan Aff. ¶ 16.) Geotextile filter fabric is placed on top of the entire structure and up against the sides of the plastic fins: the pins protruding from the plastic walls "hold the filter fabric 1/4" away from the perforations to avoid any chance of clogging." (CTL Product Description at 4–5, 7–8; Cur–Tech H–20 Load Rating Detail.)

Frank Currivan, founder and managing member of Cur–Tech, was issued U.S. Patent No. 7,384,212 B2 ("'212 Patent") on June 10, 2008 for an earlier version of the CTL System, which had triangular, rather than rectangular, appendages. (Currivan Aff. ¶ 19; '212 Patent, Ex. 2 to Currivan Aff.) The '212 Patent states that the appendages, or fins, protruding from the concrete chamber allow for "an increased amount of liquid and liquid waste to diffuse into the ground." '212 Patent, col. 3, ll. 5–13. The appendages serve to "permit diffusion into the ground from the [chamber] in a rapid manner." *Id.* col. 3, ll. 60–62. The appendages increase the surface area of the "septic gallery" in contact with the surrounding soil and therefore "allow an increased amount of liquid effluent to escape from the first appendage, and traverse through the apertures and for diffusion to the sand, or ground." *Id.* col. 4, ll. 23–33.

II.     Claim Construction

In its February 14, 2011 Claim Construction, the Court construed the term "geonet" as "a series of repetitive elements that create a volume consisting of 90–95% void space." *Potts v. Cur–Tech*, No. 3:09cv65 (JBA), 2011 WL 570156, *5 (D. Conn. Feb. 14, 2011). The Court noted that the purpose of the geonet was to enable and maintain aerobic conditions in leaching conduits by maintaining a roughly 90% void through the interconnected structural elements that make up the volume of the geonet. *Id.* at *6. "The porous nature of the geonet allows the fluid to drain through the channel and maintains aerobic conditions." *Id.* A "molded plastic three dimensional grid" may potentially be a geonet, but only where that grid conforms to these geonet characteristics, i.e., where it creates a porous volume of interconnected repetitive elements and maintains a 90–95% void space. *Id.* at *5.

The Court also construed the phrase "high aspect ratio channel" in Claim 6 of the '670 Patent to mean "a channel with an aspect ratio of 96 to 3, where that aspect ratio is determined by dividing the height of the channel by the width of the channel, as demonstrated in Figure 14 of the '670 Patent." *Id.* at *7. It is the width of the individual channels that make up the wastewater system that determines the relevant ratio, not the width of the wastewater system as a whole. *Id.* at *6–7.

III.     Discussion[1]

"A determination of infringement involves two steps: First, the court determines the scope and meaning of the asserted patent claims. The court then compares the properly construed claims to the allegedly infringing device to determine whether all of the claim limitations are present, either literally or by a substantial equivalent." *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1318–19 (Fed. Cir. 2011). "[I]nfringement, whether literal or under the doctrine of equivalents, is a question of fact." *Id.* at 1319. "Literal infringement requires that the accused device embody every element of the claim," whereas infringement under the doctrine of equivalents requires that the accused device "perform[] substantially the same function in substantially the same way to obtain the same result." *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 257–58 (Fed. Cir. 1985).

Plaintiffs argue that they are entitled to summary judgment in their favor on literal infringement because the pins protruding from the exterior of the fins on the CTL System form, in combination with the surrounding geotextile fabric, create a geonet that literally infringes each element of Claim 6 of the '670 Patent. Cur–Tech argues that it is entitled to summary judgment in its favor because the CTL System does not literally infringe either

---

[1] "Summary judgment is appropriate where, construing all evidence in the light most favorable to the non–moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

5

Claim 6 or Claim 12 of the '670 Patent and does not infringe the '670 Patent under the doctrine of equivalents. Cur–Tech also argues that the '670 Patent is invalid.

### A. Literal Infringement

The dispute between the parties as to literal infringement turns on whether Cur–Tech's CTL System includes a geonet, as that term was construed by the Court. Plaintiffs argue that the pins protruding from the exterior of the fin structure constitute the "series of repetitive elements that create a volume consisting of 90–95% void space." (Pls.' Mem. Supp. [Doc. # 90–1] at 10.) They argue that the pins are arranged in a repetitive pattern, maintain a void space of between 90% and 95% between the fin exterior and the filter fabric, and allow fluid to drain through the channel in order to maintain aerobic conditions. Cur–Tech argues that the volume within the channel created by the fin pieces has flat rigid sides and is "completely empty or 100% void." (Def.'s Mem. Supp. [Doc. # 89] at 6.) "The four sides of each appendage enclose a volume that does not have any filter material or media inside. The complete absence of material within the volume is inconsistent with Potts' description of the geonet filtering volume that facilitates an aerobic reaction and aerobic treatment of the effluent. By contrast, the [CTL System] distributes effluent into the surrounding leach field . . . [and] does not treat the effluent leaching field." (*Id.* at 10.)

As discussed by the Court in claim construction, the purpose of the geonet is to enable and maintain aerobic conditions in leaching conduits through its "porous nature" and 90–95% void space: "The porous nature of the geonet allows the fluid to drain through the channel and maintains aerobic conditions." *Potts*, 2011 WL 570156, at *6. The geonet sustains the aerobic reaction and, according to Claim 6 of the '670 Patent, fills the high

6

aspect ratio channel. *Id.* Neither the interior of the fins on the CTL System, which consist of 100% void space, nor the space between the fin wall exterior and the surrounding filter fabric maintained by the pins, create a porous medium to maintain aerobic conditions. Instead, the CTL System provides greater surface area for liquid effluent to diffuse or disperse into the surrounding soil after it has already made its way through the chamber or leaching conduit. '212 Patent col. 3, ll. 5–13, 60–62, col. 4, ll. 23–33. As described by Defendant, the CTL System operates as a dispersal system rather than an aerobic environment.

Plaintiffs, however, claim that the space between the exterior fin wall and the filter fabric maintained by the pins constitutes a channel of the same nature as described in Claims 6 and 12 of the '670 Patent, and pins and the fabric create a 90–95% void, i.e., a geonet. This strained view of the exterior of the fin ignores the stated purpose of the geonet, which Plaintiffs' agreed at the Markman hearing was to "permit . . . effluent to engage in an aerobic exchange permitting the effluent to be treated, decomposed and passed on into the soil." *Potts*, 2011 WL 570156, at *6. The space between the fin wall and fabric created by the pins is less than half an inch; this thin gap between fin and surrounding soil serves only to disperse fluid from the CTL System and prevent ingress of soil into the system, it does not treat or decompose any waste. The '670 Patent contemplates and describes a system where fluid drips from pipe through channels filled with geonet; as the fluid flows through the geonet it draws air into the 90–95% void, allowing for aerobic breakdown and decomposition of the waste. The CTL System does not fit this description. In the CTL System, effluent flows through a 100% void concrete channel and into 100% void plastic fins alongside that channel. The fins disperse liquid effluent into the surrounding soil; filter

7

fabric on the exterior of the fins prevents the ingress of soil into the system. Nowhere does the CTL System contain a channel filled with a series of repetitive elements that create a 90–95% void space that maintain aerobic conditions for effluent breakdown.

Cur–Tech is therefore entitled to summary judgment in its favor that the CTL System does not literally infringe Claims 6 and 12 of the '670 Patent.

B.   Doctrine of Equivalents

The doctrine of equivalents asks: "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). "An analysis of the role played by each element in the context of the specific patent claim will . . . inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Id.*

As discussed above, and according to the '212 Patent, the fins protruding from the CTL System do not maintain aerobic conditions, but instead permit an increased level of dispersion from the concrete chamber and into the surrounding soil. The fins allow for "an increased amount of liquid and liquid waste to diffuse into the ground," and "permit diffusion into the ground from the [chamber] in a rapid manner." '212 Patent col. 3, ll. 5–13, 60–62. In comparison, the geonet of the '670 Patent serves to foster an aerobic reaction through the use of porous medium. The geonet and the Potts design are aimed at generating a particular reaction within a septic system, whereas the CTL System—the fins in particular—is aimed at increasing the diffusion of liquid from a septic system into the surrounding soil. The fins of the CTL System therefore play a role substantially different

from that of the geonet.  The CTL System accordingly does not infringe the '670 Patent under the doctrine of equivalents.

III.    Conclusion

For the reasons stated above, Plaintiffs' motion [Doc. # 90] motion for summary judgment is DENIED and Defendant's motion [Doc. # 87] for summary judgment is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24th day of February, 2012.